M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: 916.823.6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Jason T. Dennett*
**MILBERG, PLLC**
1700 7th Avenue, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
*jdennett@milberg.com*

John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
*jnelson@milberg.com*

*Attorney for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AJANI HOFFERT, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| vs. | **DEMAND FOR JURY TRIAL** |
| LAVENDER LINGERIE, LLC, dba Savage X Fenty, | |
| Defendant | |

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 1

Plaintiff Ajani Hoffert ("Plaintiff") on her own behalf and on behalf of all others similarly situated, by and through her counsel, brings this action against Defendant Lavender Lingerie, LLC, doing business as Savage X Fenty (referred to below as "Defendant" or "Savage X"). The allegations contained herein, which are based on Plaintiff's knowledge of facts pertaining to herself and her own actions and counsels' investigations, and upon information and belief as to all other matters, are as follows:

## NATURE OF THE CASE

1.      This class action arises from Savage X's retention of profits generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*.

2.      Beginning in February 2025, the federal government imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. Those tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3.      U.S. importers—including Savage X—responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, American consumers paid higher retail prices for consumer goods reflecting the economic burden of those tariffs.

4.      Savage X imposed an explicit tariff surcharge on consumer purchases, including at checkout through its website.

5.      On February 20, 2026, the Supreme Court of the United States held that the IEEPA-based tariffs were unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 2

6. As a consequence of that decision, importers who paid those tariffs—including Savage X—became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP").

7. Savage X collected the tariffs from consumers through its tariff surcharge. The federal government owes it refunds of the same tariff payments.

8. Unless restrained by this Court, Savage X stands to recover the same tariff payments twice—once from consumers and again from the federal government through tariff refunds, including interest paid by the government on those funds.

9. Savage X has made no legally binding commitment to return tariff-related surcharges to the consumers who actually paid them.

10. Plaintiff brings this action on behalf of millions of consumers who purchased goods from Savage X during the Class Period and who paid tariff surcharges reflecting Savage X's pass-through of unlawful tariffs.

11. Plaintiff seeks restitution of those tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

## JURISDICTION AND VENUE

12. Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because: (a) at least one member of the class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

13. The Court has personal jurisdiction over Defendant because Savage X is headquartered in El Segundo, California which is within this district, conducts significant business transactions in this District, and because the wrongful conduct occurred in and emanated from this District.

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 3

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business in located in this District in El Segundo, California, and a substantial portion of the events and conduct giving rise to the claims occurred in this District.

## PARTIES

18.    Plaintiff Ajani Hoffert is a resident and citizen of Fair Oaks, California. During the Class Period, Plaintiff Hoffert purchased goods from Savage X that were imported from countries subject to the IEEPA tariffs. Plaintiff Hoffert paid retail prices for those goods that were increased by Savage X's tariff surcharge to account for the tariffs imposed on imported products. Plaintiff Hoffert would not have paid those higher prices absent the unlawful tariffs and Savage X's pass-through of those tariffs to consumers.

19.    Defendant Lavender Lingerie, LLC is a Delaware limited liability company with its principal place of business in El Segundo, California. It does business as Savage X Fenty. Lavender Lingerie is responsible for the marketing, distribution, and sale of Savage X Fenty products in the United States. A significant portion of the products Savage X Fenty sells are imported goods subject to IEEPA tariffs imposed by the United States government.

## FACTUAL BACKGROUND

### A.    SAVAGE X'S BUSINESS

20.    Savage X is a retail apparel and fashion company headquartered in El Segundo, California. The company identifies its primary location as 800 Apollo Street, El Segundo, California 90245, and describes itself as a privately held company in the "Retail Apparel and Fashion" industry.[1]

---

[1] See Savage X Fenty LinkedIn Profile, https://www.linkedin.com/company/savagexfenty

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 4

21.     Savage X was established in 2018 by Rihanna and sells an "extensive assortment" of lingerie, everyday basics, men's essentials, sleepwear, loungewear, and bridal styles.[2]

22.     Savage X operates through a direct-to-consumer retail model centered on its website, *savagex.com*, where consumers purchase apparel products directly from Defendant.[3]

23.     Savage X also operates a membership-based pricing model known as the Savage X Rewards Membership. Under this model consumers pay a monthly subscription fee (Approximately $60.00/month) and can use credits accumulated through the payment of that monthly fee at checkout.[4]

24.     Savage X's business depends on selling apparel and textile products—categories that are heavily import-dependent. Apparel sold in the United States is overwhelmingly sourced through global supply chains, and the United States is the world's largest apparel importer, with the majority of apparel imports originating from Asia, including countries such as China, Vietnam, and Bangladesh.[5]

25.     During the Class Period, Savage X imposed tariff surcharges on consumers at checkout.

26.     In one example, Savage X told consumers that tariffs increased its costs and that it had added an 8.75% surcharge to purchases.[6] Other examples include varying rates for tariff charges imposed at different times during the Class Period.

---

[2] *See* Savage X Fenty, *About Savage X Fenty*, https://www.savagex.com/about
[3] *See Id.*
[4] *See* Savage X Fenty, *Savage X Rewards Membership*, https://www.savagex.com/xtrasavage
[5] *See* U.S. Int'l Trade Comm'n, *Apparel: Export Competitiveness of Certain Foreign Suppliers to the United States*, Inv. No. 332-602, USITC Pub. No. 5501 (Sept. 2024).
[6] *See* Yahoo News, *My Rihanna bra haul tells you all you need to know about tariffs* (Apr. 5, 2025), https://www.yahoo.com/news/rihanna-bra-haul-tells-know-094027454.html

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 5

27.    The exact amount of tariff charges is currently unknown but will be uncovered during discovery.

28.    On information and belief, Savage X began imposing tariff-related surcharges on consumer purchases no later than April 2025, and did so in direct response to the federal government's imposition of tariffs that same month.

29.    Savage X's surcharge is a direct admission that tariffs affected Defendant's cost structure and that Defendant chose to shift at least part of that tariff burden to consumers. Rather than absorbing the tariff costs itself, Savage X separately charged consumers a surcharge tied to those tariffs.

**B.    THE IEEPA TARIFFS**

30.    Beginning in February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries pursuant to a series of executive orders declaring national emergencies related to trade and supply chain concerns.[7]

31.    Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners. The orders included duties of approximately 25 percent on many imports from Canada and Mexico and additional tariffs on imports from China that were layered on top of existing duties, resulting in substantially higher effective tariff rates on Chinese goods.[8]

32.    The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for retailers and other businesses that

---

[7] *See* Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[8] *See* Reuters, *Trump Orders Tariffs on Canada, Mexico and China*, Feb. 1, 2025.

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 6

rely heavily on international supply chains to source merchandise—like Defendant Savage X.[9]

33.    Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including Savage X—were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered merchandise into the country.[10]

34.    Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.[11]

35.    On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation and invalidated the tariff orders issued pursuant to that statute.[12]

36.    The Supreme Court's decision effectively eliminated the legal basis for the IEEPA tariffs and created a pathway for importers that had paid those duties—including Savage X—to seek refunds of the tariffs previously collected by the federal government.

37.    The tariffs invalidated by the Supreme Court were part of a sweeping trade policy announced on April 2, 2025—referred to by the Trump administration as "Liberation Day." On that date, the President declared a national emergency and invoked the IEEPA to impose broad tariffs on imported goods entering the United States.

---

[9] *See* Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

[10] *See* U.S. Customs & Border Prot., *Importing Into the United States: A Guide for Commercial Importers*.

[11] *See* Reuters, *Businesses Sue Over Trump's Tariffs*, Apr. 2025.

[12] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026)

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 7

38. As part of the "Liberation Day" program, the federal government imposed a baseline tariff of approximately 10% on nearly all imports, with additional "reciprocal" tariffs targeting specific countries at higher rates, including major U.S. trading partners.

39. These tariffs were implemented within days of the announcement, with the baseline tariffs taking effect on or about April 5, 2025, and higher country-specific tariffs scheduled to take effect shortly thereafter.

40. The scope and structure of the "Liberation Day" tariffs represented a dramatic departure from prior U.S. trade policy, applying broadly across industries and affecting a wide range of imported consumer goods, including apparel and textile products sold by companies like Savage X.

41. In response to the "Liberation Day" tariffs, and in anticipation of the same, companies that relied on imported goods—including apparel retailers like Savage X—began adjusting pricing, sourcing, and supply chain strategies to account for increased import costs.

42. The tariffs imposed above have remained in effect throughout the Class Period.

## C.    TARIFFS ARE ECONOMICALLY BORNE BY CONSUMERS

43. Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties.

44. As Nobel-Prize winning economist Dr. Milton Friedman famously quipped in 1978, tariffs act as a consumption tax that "protects the consumer against low prices."[13]

_____

[13] https://www.k-state.edu/landon/speakers/milton-friedman/transcript.html.

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 8

45.     Economist Dr. Douglas Holtz-Eaton, Director of Economic Policy Studies at the American Enterprise Institute stated "[t]ariffs are a national partial sales tax, and they're paid by all purchasers—consumers and businesses. So it shows up ultimately on the consumer tab after businesses pass it through."[14]

46.     Dr. N. Gregory Mankiw, Harvard economics professor and former Chairman of the Council of Economic Advisers under President George W. Bush stated "[t]ariffs are paid by domestic consumers, not by foreign exporters. . . . What was originally proposed regarding tariff policy is considered economic malpractice on a grand scale."[15]

47.     Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[16]

48.     When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of companies facing tariff-related cost increases passed at least some portion of those costs through to their customers

---

[14]    https://www.americanactionforum.org/multimedia/the-aaf-exchange-ep-169-trumps-first-100-days-and-the-latest-on-reconciliation/.

[15]https://www.hks.harvard.edu/centers/mrcbg/programs/growthpolicy/tariff-policies-are-large-scale-economic-malpractice; https://news.cgtn.com/news/2025-04-22/Harvard-professor-US-tariffs-are-large-scale-economic-malpractice-1CMssVRkapW/index.html.

[16] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); see also Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 9

in the form of higher prices.[17] Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

49.    Similarly, the Federal Reserve Bank of Dallas recently confirmed that the 2025–2026 tariffs materially increased consumer prices and that "pass-through from the 2025 tariffs is effectively complete," meaning the costs of the tariffs were ultimately borne by purchasers through higher prices.[18]

50.    The Dallas Federal Reserve further explained that tariff collections "boosted core goods PCE[19] inflation by approximately 2.2 percentage points" and increased overall core PCE inflation by approximately 0.8 percentage points, reflecting widespread downstream price increases imposed on consumers as businesses passed tariff costs through the supply chain.[20]

51.    These findings confirm that tariffs imposed during the relevant period functioned as a direct economic burden on consumers because businesses responded to the tariffs by increasing prices charged to end purchasers rather than internally absorbing the additional costs.

52.    Savage X followed this same pattern during the tariff period.

53.    During the Class Period, Savage X imposed an explicit tariff-related surcharge on consumer purchases at checkout.

---

[17] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), available at https://libertystreeteconomics.newyorkfed.org.)

[18] *See* Ron Mau & Tucker Smith, Effects of Realized Tariff Changes on PCE Prices Peaked in First Quarter 2026, Fed. Rsrv. Bank of Dall. (May 5, 2026), available at: https://www.dallasfed.org/research/economics/2026/0505-mau.

[19] "PCE" refers to Personal Consumption Expenditures, an economic measure of how much consumers are spending on goods and services in the economy.

[20] *See* Ron Mau & Tucker Smith, Effects of Realized Tariff Changes on PCE Prices Peaked in First Quarter 2026, Fed. Rsrv. Bank of Dall. (May 5, 2026), available at: https://www.dallasfed.org/research/economics/2026/0505-mau.

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 10

54.    At the point of sale, Savage X informed consumers that tariffs had increased its costs and disclosed that it had "added an 8.75% surcharge" to customer purchases in response to those tariffs.[21]

55.    Public reporting reflects that the surcharge charged by Defendant was not fixed at a single rate for the entire Class Period. While some consumers were charged approximately 8.75%, other consumers were charged lower percentages, including approximately 5% to 5.25%, depending on the transaction or timing of purchase.[22]

56.    Additional publicly available consumer-facing materials, including screenshots of Savage X's checkout disclosures, similarly reflect tariff-related surcharges at varying percentage levels, further confirming that the surcharge was applied inconsistently across transactions.[23]

57.    Additional publicly available consumer reports—including numerous user-posted videos and commentary on social media platforms such as TikTok—similarly reflect that Savage X imposed tariff-related surcharges on consumer purchases at checkout. These user accounts consistently describe the presence of a separate "tariff" charge applied as a percentage of the purchase price and confirm that consumers were required to pay such charges in order to complete their transactions.

---

[21] *See* Yahoo News, *My Rihanna bra haul tells you all you need to know about tariffs* (Apr. 5, 2025), https://www.yahoo.com/news/rihanna-bra-haul-tells-know-094027454.html.

[22] *See* Reddit user reports describing Savage X Fenty tariff charges of "5%" and "5.25%," available at https://www.reddit.com/r/PlusSize/comments/1grj0zm/worried_about_future_tariffs_effecting_where_how/.

[23] *See* Threads post showing Savage X Fenty tariff surcharge disclosure, https://www.threads.com/@mayelacv/post/DFEzJHlR6QJ/media.

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 11

58. The existence of multiple surcharge rates confirms that Savage X was not merely passing through a uniform, government-imposed tariff rate, but instead exercised discretion in determining the amount charged to consumers. This variability demonstrates that the surcharge was a pricing mechanism controlled by Defendant rather than a fixed or unavoidable charge dictated solely by law.

59. Savage X further explained to consumers that tariffs on imported goods—particularly those sourced from countries such as China—were increasing the cost of its products and necessitating pricing adjustments.[24]

60. Savage X also acknowledged in public-facing statements that the tariff surcharge was "a fee charged to customers on every order as a result of increased duties and tariffs," confirming that the charge was directly tied to import duties imposed by the federal government.[25]

61. In addition, Savage X's own Terms and Conditions reserve the right to impose "fees associated with tariffs and surcharges," further confirming that Defendant contemplated and implemented tariff-related charges in connection with consumer purchases.[26]

62. These representations were made directly to consumers in connection with their purchases and were intended to explain the basis for the additional charge imposed at checkout.

63. Savage X's statements constitute an express admission that: (a) tariffs increased its cost of goods, and (b) those increased costs were being passed through to consumers.

---

[24] *See* Yahoo News, *My Rihanna bra haul tells you all you need to know about tariffs* (Apr. 5, 2025), https://www.yahoo.com/news/rihanna-bra-haul-tells-know-094027454.html.
[25] *See* Savage X Fenty statement, available at https://x.com/SavageXFenty/status/1651447693837737984.
[26] *See* Savage X Terms & Conditions, https://www.savagex.com/terms.

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 12

64. As a result, consumers purchasing goods from Savage X during the Class Period were required to pay an additional amount expressly tied to tariffs, separate from the base price of the merchandise.

65. This surcharge functioned as a direct pass-through of tariff costs from Savage X to its customers.

66. Savage X's own explanation confirms that the surcharge was not incidental or unrelated to tariffs; rather, it was imposed specifically because tariffs increased Defendant's costs.

67. This further confirms that Savage X treated tariffs as a cost to be incorporated into consumer pricing, whether through an explicit surcharge or otherwise.

68. Consumers had no meaningful ability to avoid this charge other than by declining to complete their purchases, as the surcharge was imposed at checkout.

69. As a result of Defendant's conduct, Plaintiff and Class members paid inflated prices for Savage X products that included tariff-related surcharges.

70. Savage X's imposition of this surcharge establishes a clear and traceable link between:

    a. the tariffs imposed by the federal government;

    b. the additional charges imposed by Defendant, and

    c. the amounts paid by consumers.

71. This direct link eliminates any ambiguity regarding whether tariff costs were passed through to consumers.

72. Plaintiff and Class members paid tariff-inflated prices at Savage X during the Class Period, while Savage X now seeks to retain the consumer pass-through even though the federal government owes it a refund of the same unlawful tariff charges.

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 13

## D.   TARIFFS INVALIDATED BY SCOTUS

73.   As described above, in February 2026, the Supreme Court held that the President's tariff regime exceeded the statutory authority granted by IEEPA and invalidated the challenged tariff orders.[27] Following the SCOTUS decision, importers that had paid IEEPA tariffs—including Savage X—became eligible to pursue refunds of those duties.

74.   On March 4, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered U.S. CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refund suits.[28]

75.   The scale of the refund process is unprecedented. Public reporting estimates that approximately $166 billion in tariffs collected under the IEEPA regime must be refunded to more than 330,000 importers across roughly 53 million import entries.[29]

76.    By late April 2026, millions of entries had already entered the refund pipeline, and the federal government began preparing to issue payments to importers as early as May 2026.[30]

77.   These post-decision developments confirm that tariff refunds are not speculative or hypothetical. Rather, they are imminent, substantial, and already in the process of being distributed to importers.

---

[27] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026).
[28] *See Atmus Filtration, Inc. v. United States*, No. 26-01259, (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.
[29] *See* Reuters, *U.S. says first refunds from Trump tariffs expected around May 11* (Apr. 29, 2026)
[30] *Id*.

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 14

78.    Accordingly, Savage X's retention of tariff-related surcharges—while simultaneously owed refunds of those same tariffs—creates a concrete and immediate risk of double recovery that this Court can and should address.

79.    Savage X stands to recover substantial sums if tariff refunds are paid.

80.    Savage X can expect to recover significant tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because Savage X previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning Savage X now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by the Plaintiff and Class members.

81.    In practical terms, Savage X stands to receive a windfall: it has already recouped tariff costs from consumers through tariff surcharges, and it now stands in line to recover those same unlawful tariff payments from the federal government.

**PLAINTIFF AJANI HOFFERT'S EXPERIENCE**

82.    Plaintiff Ajani Hoffert is a Savage X customer and had a Savage X membership at the time of her purchases.

83.    Plaintiff Hoffert purchased multiple items during the Class period where she was charged a tariff surcharge.

84.    For example, on April 9, 2026, Plaintiff Hoffert made a purchase from Savage X. Upon checkout, Savage X imposed a charge which it labeled as "TARIFFS" totaling $44.04, as illustrated by the email receipt below:

85.    Plaintiff Hoffert is entitled to a refund of all the tariff surcharges, plus interest, she paid to Savage X.

**CLASS ALLEGATIONS**

86.    A class action is the proper forum to bring Plaintiff's claims under FRCP 23. The potential Class is so large that joinder of all members would be

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 15

impracticable. Additionally, there are questions of law or fact common to the Class, the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and the representative parties will fairly and adequately protect the interests of the Class.

87.     This action satisfies all of the implicit and explicit requirements of FRCP, including numerosity, commonality, typicality, adequacy, predominance and superiority.

88.     **Numerosity**: the Class is so numerous that joinder of all members is impracticable.  While the exact number is not known at this time, it is generally ascertainable by appropriate discovery.  Given the consumer base of Savage X, the class numbers in the hundreds of thousands or millions of consumers.

89.     **Commonality:** the claims made by Plaintiff meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the classwide litigation. These shared questions predominate over individual questions, and they include, without limitation:

    a. whether Savage X paid tariffs imposed under the International Emergency Economic Powers Act ("IEEPA") on imported goods during the Class Period;

    b. whether Savage X increased retail prices on goods sold to consumers in response to those tariffs;

    c. whether Savage X passed through some or all of the tariff costs to consumers through higher prices;

    d. whether Savage X sought or will seek refunds of those tariffs from the federal government;

    e. whether Savage X's retention of tariff refunds corresponding to tariff costs paid by consumers constitutes unjust enrichment;

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 16

    f.   whether Savage X's conduct was unfair under applicable consumer protection laws; and

    g.   the appropriate measure of restitution, damages, or other relief resulting from Savage X's conduct.

90.    **Typicality**: Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class member, bought products from Savage X subject to tariff related price increases.

91.    The claims of the Class Representative Plaintiff is furthermore typical of other Class members because she makes the same claims as other Class members. Plaintiff has an interest in seeking compensation from Defendant.

92.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members.

93.    **Superiority:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 17

for those class members who could afford to litigate such a claim, it would still be economically impractical.

94.     The nature of this action and the nature of laws available to Plaintiff and the Class makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged. Without the class action mechanism, Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; and the costs of individual suits could unreasonably consume the amounts that would be recovered. Likewise, proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class, and will establish the right of each member of the Class to recover on the cause of action alleged; and Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

95.     The proposed Nationwide Class is described as follows:

All persons in the United States who purchased goods from Savage X during the Class Period on which Savage X imposed a tariff surcharge.

96.     The proposed California Class is described as follows:

All persons in California who purchased goods from Savage X during the Class Period on which Savage X imposed a tariff surcharge.

97.     The "Class Period" is the period during which Defendant assessed tariff related charges to consumers. The precise contours of the Class Period can only be determined through discovery. In no event shall the Class Period be less than the period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling,

concealment, and accrual issues, and ending on the date of entry of judgement or preliminary approval of a settlement.

98. Plaintiff reserves the right to modify or amend the definition of the proposed class, Class Period, and proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

99. Plaintiff will fairly and adequately protect the interests of the Class. The interests of the class representative are consistent with those of the other members of the Class. In addition, Plaintiff is represented by experienced and able counsel who have expertise in the areas of tort law, trial practice, and class action representation.

100. The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

101. Excluded from the Class are:

    a. Defendant and any entities in which Defendant has a controlling interest;

    b. Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

    c. The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

    d. All persons or entities that properly execute and timely file a request for exclusion from the Class; and

    e. Any attorneys representing the Plaintiff or the Class.

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 19

**CLAIMS FOR RELIEF**
**COUNT I**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

102.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

103.    Plaintiff and the Class have conferred a benefit upon Defendant in the form of the money Defendant received from them through tariff surcharges on goods during the period February 1, 2025, through February 24, 2026.

104.    Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

105.    Under principles of equity and good conscience, Defendant should not be permitted to retain the amount of the tariff surcharges obtained from Plaintiff and the members of the Class, which Defendant has unjustly obtained as a result of its price increases on goods subject to unlawful tariffs. As it stands, Defendant has retained profits generated from its sales of products subject to tariff-related price increases and should not be permitted to retain those ill-gotten profits when it is seeking a refund of the duties it paid.

106.    Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

**COUNT II**
**Money Had and Received**
**(On behalf of Plaintiff and the Class)**

107.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

108. Plaintiff alleges this claim individually and on behalf of the proposed class.

109. Defendant received money from Plaintiff and from each member of the proposed Class in the form of a tariff surcharge. The Supreme Court has determined that the tariffs were unlawful.

110. The money belonged to Plaintiff and to each member of the proposed Class.

111. Defendant has not returned the money.

112. It will give offense to equity and good conscience if Defendant is permitted to retain the tariff surcharge. Plaintiff seeks the return of the money in an amount to be proven at trial.

113. Plaintiff seeks all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to her.

### COUNT III
### Violation of California's Unfair Competition Law ("UCL")
### Cal Bus. & Prof. Code § 17200, *et seq.*
### (On behalf of Plaintiff Hoffert and the California Class)

114. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

115. Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

116. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 21

117. Savage X acted with knowledge and intent.

118. Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. Savage X engaged in unfair and deceptive acts by: (i) charging customers a tariff surcharge; and (ii) retaining tariff refunds despite having passed the costs to its customers.

119. Savage X's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Savage X's violation of consumer protection and unfair competition laws resulted in harm to consumers.

120. Defendant's wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendant were engaged in sales nationwide.

121. Defendant has profited immensely from its unlawful conduct.

122. As a result of Defendant's conduct, Plaintiff and the Class members were injured in their business or property—i.e., economic injury—in that they paid inflated prices for goods subject to tariffs.

123. As described throughout this Complaint, Defendant's conduct (1) caused substantial injury that is (2) not reasonably avoidable by consumers and that (3) is not outweighed by the benefits to consumers or competition.

124. Defendant's unfair or deceptive conduct proximately caused Plaintiff's and the Class members' injury because, but for the challenged conduct, Plaintiff and the Class members would not have paid inflated prices for goods subject to tariffs and they did so as a direct, foreseeable, and planned consequence of that conduct.

125.    The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

126.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

127.    Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of their unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

## COUNT IV
### Violation of California's Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, *et seq*.
### (On behalf of Plaintiff Hoffert and the California Class)

128.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

129.    Savage X is a "person" as defined by California Civil Code § 1761(c).

130.    The California Plaintiff and the other California Class members are "consumers" within the meaning of California Civil Code § 1761(d).

131.    For the reasons alleged above, Savage X violated California Civil Code § 1770(a)(5)(7) and (9).

132.    Savage X's unfair and deceptive acts or practices occurred repeatedly in Savage X's trade or business.

133.    Savage X acted with knowledge and intent.

134.    Savage X engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 23

135. With respect to restitution under the CLRA claim, there is no adequate remedy at law for the reasons already alleged above.

136. As a result of Savage X's misconduct, the Plaintiff and other California Class members have suffered monetary harm.

137. Plaintiff seeks all relief available under this cause of action.

## COUNT V
## Declaratory Relief, 28 U.S.C. § 2201
### (On behalf of Plaintiff and the Class)

138. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

139. Plaintiff alleges this claim individually and on behalf of the proposed Class.

140. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

141. Plaintiff's claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Defendant.

142. Plaintiff has suffered an injury by having been required to pay Defendant a tariff surcharge because of the subject tariffs on Defendant's product. And Plaintiff will imminently suffer an injury by Defendant's unlawful retention of the tariff refund.

143. This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiff but refunded to Defendant is unlawful for any of the above reasons.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the proposed class pray for relief and judgment against Defendant, as follows:

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 24

a. For an order certifying the proposed classes, appointing Plaintiff and her counsel to represent the proposed class and notice to the proposed classes to be paid by Defendant;

b. For damages suffered by Plaintiff and members of the proposed class;

c. For restitution to Plaintiff and the proposed class of all monies wrongfully obtained by Defendant;

d. For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

e. An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

f. For Plaintiff's reasonable attorneys' fees, as permitted by law;

g. For Plaintiff's costs incurred;

h. For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i. For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

DATED this 22nd day of May, 2026.            Respectfully submitted,

By: /s/ M. Anderson Berry
M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 25

Seattle, WA 98101
Phone: 916.823.6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Jason T. Dennett*
**MILBERG, PLLC**
1700 7th Ave, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
*jdennett@milberg.com*

John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
*jnelson@milberg.com*

*Counsel for Plaintiff*

*Pro Hac Vice* applications forthcoming

PLAINTIFF'S CLASS ACTION COMPLAINT
FOR DAMAGES - 26